Francisco Arocena, Plaintiff and Appellant, *v.* Hiram Gómez, Defendant and Appellee.

No. 3939. Argued December 3, 1926.—Decided April 29, 1927.

*Fernando B. Fornaris* for the appellant. *José Sabater* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

Francisco Arocena sued Hiram Gómez for damages caused to his automobile, a two-seat Buick, in a collision with the defendant's Cadillac. Both cars were being driven by their owners. On that occasion the defendant was driving along the road within the urban zone of Arecibo towards Mayagüez, and the plaintiff was emerging from the gasoline filling station of the West India Oil Co. Both cars were damaged by the collision.

The plaintiff substantially alleged that the defendant was driving his car in a negligent manner at the time of the collision, (1) because he was driving on the left side of the road, (2) because he was driving too fast, taking into account the place where the accident occurred, and (3) because he gave no warning or signal.

The defendant denied the allegations and filed a cross-complaint, alleging that he was driving on the right side of the road at a speed not greater than 20 miles; that he signaled, and that the collision was due solely to the negligence of the plaintiff in suddenly and unexpectedly emerging into the road from the filling station at fast speed just as the defendant was passing.

Some photographs were submitted in evidence to show the place where the accident happened, and the court, after hearing the evidence on both sides, dismissed the complaint and sustained the cross-complaint. The opinion of the lower court is short and sets down as follows the essential fact admitted as proven:

"1. That on the 23rd of April, 1924, and as the defendant and cross-complainant Hiram Gómez was traveling with his family in his Cadillac on the Utuado-Arecibo road, going from San Juan towards Mayagüez at moderate speed and on the right hand side of the road, the plaintiff and cross-defendant, Francisco Arocena, driving a Buick car belonging to him, came out unexpectedly from a filling station of the West India Oil Company situated on the right side of the Utuado–Arecibo road at great speed and drove it against the right side of Hiram Gómez's Cadillac without the latter being able to avoid the collision."

The court undoubtedly based its decision on the evidence of the defendant's witnesses. The evidence for the plaintiff consisted of his own testimony, that of two witnesses who were employees of the West India Oil Company, and of an agent of the Texas Oil Company. The above ocular witnesses tend to prove the theory of the plaintiff, at least in that part thereof where it is alleged that when the plaintiff tried to reach the right side of the road toward Utuado he found that the defendant was coming from the opposite direction on the same side and did not stop his car to avoid a collision. In his testimony Arocena said in part:

"I was in Arecibo and was leaving for home. I took gasoline at the West India filling station and when I was leaving that place he was coming along from Utuado to Arecibo. I was leaving the West India filling station, I had already put second gear and he was coming from Utuado to Arecibo and there he collided with me, almost at a standstill. Q.—Where did he collide with you? A.—In front. Q.—Had you already reached your right side? A.—I was right on the right side. Q.—Where was Gómez's car coming along? A.—Right along his left side. Q.—Was he going slowly? A.—At an awful speed. Q.—What kind of car did he drive? A.—A Cadillac.

Q.—Did he sound the horn or klaxon? A.—No. Q.—Was the collision violent or light? A.—It was such an awful blow that my car, which was weaker than his, broke the supports of the motor and was pushed back with brakes on, and he did not put the brakes on his car."

Gregorio Saavedra, an employee of the West India Oil Company, testified regarding the accident:

"About four o'clock Francisco Arocena arrived at the West India filling station to get gasoline, I waited on him, and then I stayed by the pump situated at the left side going out, Arocena left towards his right and when there the gentleman came from San Juan driving on his left. When Francisco Arocena was in front of the ice factory, driving on his right and sounding his klaxon, Hiram Gómez came up in his Cadillac on the same side as Francisco Arocena and collided with him. Q.—Was he driving slowly? A.—Rather fast, very fast, then the gentleman alighted and said to him: 'Has anything happened to you?' and Arocena replied: 'No, nothing has happened, only a little shock.' Then he said to him: 'Do you wish me to take you to the hospital in case you are hurt?' and he answered: 'I am not hurt.' Then Hiram Gómez said: 'Well, Arocena, if your car has been damaged have it repaired and I will pay the bill.' "

The two other witnesses for the plaintiff did not actually see the collision, but they were there and at the sound of the collision of the two cars they hurried to the place, and from the position in which they found the two cars they stated that it was a head-on collision, the defendant being on the same side as the plaintiff.

The evidence of the defendant consisted of his own testimony and that of his chauffeur who was by his side, and of the testimony of an expert mechanic. An examination of that testimony leads us to the conclusion that it substantially confirms the theory of the plaintiff and does not support the judgment, at least in so far as it sustained the cross-complaint.

Although in some parts of the testimony of the defendant and his chauffeur they try to show that the plaintiff's car collided with the Cadillac on its right side, they all agree that it was a head-on collision. This same conclusion was reached

by the expert mechanic when he examined the car for the purpose of repairing it and estimating the amount of the damage. If this is so, then it is physically impossible to sustain the theory of the defendant that the collision took place just at the moment when the Buick was emerging from the filling station of the West India Oil Co. and when his car was one and a half meters from the edge of the road. The defendant testified that he was driving slowly, at from 10 to 15 miles (in the cross-complaint mention is made of 20 miles), that owing to the powerful brakes of the Cadillac he could stop it instantaneously at a speed of 35 miles. However, the chauffeur testified, although he attempted to contradict himself afterwards, that he saw the Buick leaving the filling station at a distance of 6 meters and that the defendant did not stop the car because "he was not quick enough to apply the brakes." This is also the same witness who stated that he saw the Buick out on the road and that the collision threw the Cadillac toward the cane field. As the cane field was on the left side of the Cadillac in the direction it was going, that is to say, the side belonging to the plaintiff, it is difficult to understand that the collision occurred to the right of the Cadillac at one and a half meters from the road. That distance seems too short to suppose that a small mass like a two-seat Buick could throw a Cadillac weighing 40 hundredweight across a road about 8 meters wide.

The testimony of the defendant and his witnesses in regard to the above speaks for itself and in its pertinent part reads as follows:

"(Hiram Gómez) Q.—How did the collision take place? A.—When Arocena's Buick driven by him collided with my Cadillac which was almost at a standstill because it has four brakes and it is not necessary to press much to stop without leaving some sort of mark. Q.—On which side did Arocena's car collide with your Cadillac? A.—On the right side of the chassis of my Cadillac. Q.—When the two cars came together on account of the collision, what was the position of your car? A.—My car was going in the direction of Maya-

güez and that of Arocena was making a semicircle trying to take to its right. . . . . Q.—In what position was Arocena's car left? A.—In front of the right hand side of the chassis of my car because the collision took place as he was trying to cross in front of my car which was keeping to the right in order to get to its right. . . . . A.—Yes, the car came up very fast in second gear. Q.—How far from the edge of the road? A.—About one and a half meters, I was keeping well to the right. . . . . Q.—Which part of your car got the impact of Arocena's car? A.—The right hand side of my chassis which was left in a very bad condition. (Judge) Q.—On which place precisely? A.—In front. (Plaintiff) Q.—Or about the position of the right front mud-guard? A.—Yes. Q.—And where did you strike Arocena's car? A.—His car struck mine but mine did not strike his. Q.—It is the same thing. A.—It is not the same thing, because as he was making a curve to take to his right he struck my car on the right hand side. Q.—So Arocena's car struck you in front? A.—Yes. Q.—Were you driving about one and a half meters from the edge? A.—Yes. Q.—Nevertheless, in spite of Arocena's car coming very near the edge the collision was in front? A.—The car was leaving the filling station making a curve and then collided. Q.—In front? A.—In front on the right hand side of the chassis. . . . . Q.—Has the Cadillac four brakes? A.—Four brakes. Q.—And when you saw Arocena you could not stop your Cadillac going at 12 or 15 miles when you say that you have only to touch the brakes to stop? A.—At that speed and at 35 miles it stops instantaneously, so that at that speed it came to a standstill by a simple pressure on the brakes. Q.—Did you apply the brakes? A.—Of course, otherwise Arocena's car would have been broken because a car weighing forty hundredweight colliding with a lighter car like that of Arocena would destroy it if driven fast.''

Nicolás Detres, the defendant's chauffeur, said:

''Q.—Did you see the car leaving the West India? A.—Yes. Q.—How far were you from the car when you saw it? A.—About from here to the door. Q.—So that you saw it when at six meters, and were you coming in front with Gómez? A.—Yes. Q.—At that distance you saw the Buick leaving the West India? A.—Yes. Q.—And was it going at 10 or 12 miles? A.—Yes. Q.—How many brakes has the Cadillac? A.—Four. Q.—At a speed like that you

were going could the car stop instantaneously by only touching the brakes? A.—It could stop. Q.—And at 25 miles could it stop instantaneously also? A.—It is rather dangerous to stop at 25 miles. Q.—But at 12 or 15 miles it can stop instantaneously? A.—Yes. Q.—Why did it not stop? A.—Because when we saw the car coming Hiram Gómez was not quick enough to stop. Q.—So that he was not quick enough to apply the brakes in time, is not that true? A.—Yes. Q.—How far from the filling station was the car of Hiram Gómez when the collision occurred? A.—Right in front.''

Simón Carlos, an expert mechanic, testified:

''Q.—From your expert knowledge, the blow received by the Cadillac car was on the right or on the left side? A.—In front, against the bumper. Q.—On the right or left side? A.—It shows at the very center. . . . .''

On the other hand the plaintiff was not justified in leaving the filling station and trying to take to his right if he saw the defendant coming, blocking his right and going at a great speed. He should have taken every precaution, since he had to cross the highway during the traffic to take to his right. It would have been more wise to let the Cadillac pass even if going at a speed beyond the legal limit.

From the foregoing the judgment appealed from must be affirmed in that part thereof dismissing the complaint and reversed in that part thereof sustaining the cross-complaint, without special imposition of costs.